UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
JUAN JOSE LOPEZ LOPEZ, as administrator of the Estate of
JESUS MANUEL LOPEZ,

Case No. 1:26-cv-1765

*Plaintiff*,

-against-

**COMPLAINT**

Jury Trial Demanded

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE
DEPARTMENT, JOHN DOE POLICE OFFICER #1, in his
individual and official capacities, JOHN DOE POLICE OFFICER
#2, in his individual and official capacities, JOHN DOE POLICE
OFFICER #3, in his individual and official capacities, JOHN DOE
POLICE OFFICER #4, in his individual and official capacities,
JOHN DOE POLICE OFFICER #5, in his individual and official
capacities, and JOHN DOE POLICE OFFICER #6, in his individual
and official capacities,

*Defendants*.
-------------------------------------------------------------------------------x

Plaintiff, JUAN JOSE LOPEZ LOPEZ, as administrator of the Estate of JESUS

MANUEL LOPEZ, complaining of the above-named Defendants by his attorneys, EGAN &

GOLDEN, LLP and MICHAEL J. BROWN, P.C., respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1.    This is a civil action by Plaintiff seeking monetary relief, including economic

loss, compensatory damages, disbursements, attorney's fees, and costs and fees under 42 U.S.C. §

1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

2.    Additionally, this action seeks monetary relief, including economic loss,

compensatory damages, punitive damages, disbursements, costs and fees from Defendants under

state law claims of wrongful death and negligent hiring and retention.

3.    Plaintiff alleges that Defendants illegally, wantonly, recklessly, knowingly

and purposefully, acting under color of state law, restrained JESUS MANUEL LOPEZ when he was

experiencing a seizure and/or medical episode, depriving him of oxygen and much-needed emergency medical care, and causing his death.

4.     Said unconstitutional and illegal conduct was known to Defendants and others who are government officials, elected officials, authorized decision makers, supervisors, and policy makers, and was accepted and supported as policy, practice and custom.

5.     Plaintiff also seeks punitive damages against the individual Defendants for their malicious, intentional, reckless and callous indifference to Plaintiff's constitutional rights.

## JURISDICTION

6.     This action is brought pursuant to 42 U.S.C. Sections 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States.  Jurisdiction of this Court is invoked under 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(1)-(4).  Pendant jurisdiction over Plaintiff's state law claims exists pursuant to 28 U.S.C. §1367.

7.     Venue is properly laid within the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391(b), as the Plaintiff's claims arose in the Southern District of New York and Defendants, THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT, are located within the District.

## PARTIES

8.     Prior to his death, JESUS MANUEL LOPEZ ("Jesus Lopez") resided in the County of New York, State of New York.

9.     On February 25, 2026, the Surrogate's Court, New York County, issued letters of administration to JUAN JOSE LOPEZ LOPEZ ("Juan Lopez") to administer the Estate of

JESUS MANUEL LOPEZ, with said letters granting Juan Lopez the power to prosecute "any cause of action arising from the death of the decedent."

10.    Juan Lopez was the brother of decedent Jesus Lopez.

11.    Defendant, THE CITY OF NEW YORK ("NYC"), is a municipal corporation organized under and existing pursuant to the laws of the State of New York.

12.    Defendant, THE NEW YORK CITY POLICE DEPARTMENT ("NYPD"), is a department within Defendant NYC.

13.    Defendants, JOHN DOE POLICE OFFICERS #1-6 ("Defendant Officers"), were at all times relevant hereto, employed by the NYPD in the position of Police Officer and are sued herein in both their individual and official capacities.

14.    During all times mentioned in this Complaint, Defendants were acting under color of law, to wit, under color of the United States and New York Constitutions, and statutes, ordinances, laws, rules, regulations, by-laws, policies, customs and usages promulgated and established thereunder.

15.    During all times mentioned in this Complaint, Defendants and each of them, separately and in concert, and with others not named as Defendants in the Complaint, engaged in acts and omissions which constituted a deprivation of the constitutional rights, privileges and immunities of Plaintiff.  While these acts were carried out under color of law, Defendants' actions had no justification, privilege or excuse in law, and were instead gratuitous, malicious, intentional, illegal and improper.

**FACTUAL ALLEGATIONS**

16.     At approximately 4:25 a.m. on September 17, 2024, inside the premises of Three Star Deli, 1045 Saint Nicholas Ave., New York, NY 10032 (the "Premises"), Jesus Lopez suffered a seizure and/or medical episode.

17.     A person inside the Premises called 911 and indicated that there was a medical emergency and that Jesus Lopez was in need of assistance.

18.     During the seizure and/or medical episode, Jesus Lopez was pacing, shaking, and unable to communicate or control his body movements.

19.     The Defendant Officers arrived at the Premises where one or more persons indicated that Jesus Lopez was in the midst of a seizure and/or medical episode.

20.     The Defendant Officers attempted to speak with Claimant Jesus Lopez who was unresponsive as a result of the ongoing seizure.

21.     Together, the Defendant Officers then attempted to physically restrain Jesus Lopez by grabbing him while he was standing and forcing him against a wall.

22.     The Defendant Officers pressed Claimant Jesus Lopez against the wall while he was still shaking and in the midst of a seizure.

23.     The Defendant Officers then handcuffed Claimant Jesus Lopez.

24.     Upon information and belief, when an ambulance arrived, the Defendant Officers told the paramedics and emergency medical technicians that they could leave and that there was no medical emergency.

25.     The ambulance, paramedics, and EMT's either left the scene or did not arrive inside the Premises.

26.    The Defendant Officers continued to physically restrain Jesus Lopez until his movements became weaker and more sporadic.

27.    Eventually, the Defendant Officers themselves transported Jesus Lopez to the hospital, where he arrived in a vegetative state.

28.    Pursuant to General Municipal Law Section 50-e, Juan Lopez, on behalf of himself and Jesus Lopez, served a Notice of Claim on Defendant NYC dated October 14, 2024.

29.    On October 25, 2024, Jesus Lopez died in the hospital as a result of the injuries he sustained from the September 17, 2024 incident.

30.    On November 14, 2024, Juan Lopez, on behalf of himself and Jesus Lopez, served a second Notice of Claim on Defendant NYC that included a new claim for wrongful death.

31.    The Defendant Officers' illegal physical restraint and waiving off of the ambulance deprived Jesus Lopez of oxygen and much-needed emergency medical care, causing his death.

32.    Had the Defendant Officers acted appropriately, Jesus Lopez would not have suffered injuries and death.

33.    Jesus Lopez never presented a threat to the Defendant Officers or any other person, was not engaged in criminal activity, and was unarmed.

34.    Jesus Lopez had not committed a crime and the Defendant Officers had no reason to suspect that he had.

35.    Defendant Officers failed to use such care in the performance of police duties as reasonably prudent and careful police officers would have used under similar circumstances.

36. Defendant Officers failed to follow and use proper police training procedure and tactics as reasonably prudent and careful police officers would have used under similar circumstances.

37. The Defendant Officers failed to properly report the incident, so as to attempt a cover up of the incident.

38. Defendant Officers failed to stop the improper restraint, and as a result, each became a tacit collaborator.

**AS AND FOR A FIRST CAUSE OF ACTION**
(42 U.S.C. § 1983, Violation of Fourth and Fourteenth Amendments to the Constitution)
(All Defendants)

39. Paragraphs "1" through "38" are incorporated herein by reference.

40. Defendants, acting under color of law, collectively and individually have engaged in actions and abuses which deprived Jesus Lopez of liberty rights, property rights, due process, equal protection under the law, and privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

41. The use of force by the Defendant Officers was objectively unreasonable and unwarranted in the circumstances present, as Jesus Lopez was unarmed, not threatening or resisting Defendant Officers in any manner and was in the midst of a seizure or medical episode for which emergency services had been called.

42. The Defendant Officers' use of excessive force against Jesus Lopez was in direct violation of his rights under the Fourth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment of the United States Constitution, to be secure against unreasonable seizure of his person.

43. The Defendant Officers' actions deprived Jesus Lopez of his right to life under the Fourth Amendment, as applied to the states by the Fourteenth Amendment.

44. The Defendant Officers' actions deprived Jesus Lopez of his right to bodily integrity and freedom from bodily restraint in violation of his substantive due process rights under the Fourteenth Amendment.

45. Defendants NYC and NYPD knew or should have known of their officers' propensity to engage in the illegal and wrongful acts detailed above.

46. Upon information and belief, the Defendant Officers and other unnamed members of the NYPD and employees of NYC, who are not named as Defendants herein, have in the past engaged in similar unlawful and unconstitutional conduct.

47. Defendants NYC and NYPD have failed to take steps to discipline, train, supervise, or otherwise correct the improper and illegal conduct of the Defendant Officers in this case, and upon information and belief, other cases involving the restraining of individuals or the emergency response to those suffering from seizures and medical episodes.

48. By reason of Defendants NYC and NYPD's unlawful governmental custom, policy, ordinance, regulation, and/or decision, the Defendants NYC and NYPD have permitted or otherwise allowed the Defendant Officers and upon information and belief, other employees of NYC and members of the NYPD to improperly respond to medical and mental health emergencies with police rather than EMT services, to engage in unlawful and dangerous restraints of individuals, and to employ unlawful force on individuals suffering from seizures or medical episodes.

49. The improper response, restraint and unlawful force that Jesus Lopez was subjected to was the result of the policy, practice and custom of the NYPD to inadequately train, supervise and discipline law enforcement officers who engage in such actions.

50.    Similar instances include the fatal shootings of Jabez Chakraborty and Win Rozario, and the shooting of Raul de la Cruz by responding NYPD officers.

51.    In each of the three incidents, the caller to NYC's 911 or 311 line stated that their family member was suffering a mental health emergency and requested that EMT services and no police officers be dispatched.

52.    Despite the request, police arrived at each of the scenes, responded to the scenes with unnecessary and unlawful force, and ultimately fatally shot Chakraborty and Rozario, and critically injured de la Cruz.

53.    It is further the policy, practice and custom of the NYPD that when police officers engage in improper restraints or employ unlawful force on individuals suffering from seizures or medical episodes, other officers do not intervene to prevent this illegal activity, do not arrest the officers engaging in the illegal activity, and do not report the illegal activity.

54.    The policy, practice and custom of NYC and the NYPD with respect to allegations of the aforementioned misconduct is to conduct a minimal investigation designed to exonerate the officer involved rather than discover the true facts of the incident.

55.    As a result of this code of silence adhered to by the police officers of the NYPD and the inadequate investigation of allegations of such conduct, police officers reasonably conclude that such behavior and activity will not result in discipline, termination, or criminal prosecution against them.

56.    Defendants NYC and NYPD, acting under color of law, and through their employees, servants, agents and designees, including amongst them, the Defendant Officers, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned

practice which deprived Jesus Lopez of his rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983.

57. Defendants NYC and NYPD are liable for the damages suffered by Jesus Lopez as a result of the conduct of its employees, agents and servants.

58. As a direct result of said acts, Jesus Lopez suffered severe injuries and death.

59. The severe injuries included but were not limited to permanent loss of consciousness, permanent loss of motor function, pre-death emotional and psychological distress, conscious and unconscious pain and suffering, loss of future earnings, loss of civil rights, and other pecuniary losses.

60. As a result of Defendants' acts, Plaintiff suffered, and is entitled to, damages in excess of Twenty Million Dollars ($20,000,000.00), as well as punitive charges, costs and attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION
(Wrongful Death)
(All Defendants)

61. Paragraphs "1" through "60" are incorporated herein by reference.

62. As a direct result of the foregoing, Jesus Lopez sustained injuries, including, but not limited to permanent loss of consciousness, permanent loss of motor function, pre-death emotional and psychological distress, conscious and unconscious pain and suffering, loss of future earnings, loss of civil rights, and other pecuniary losses.

63. These injuries and the ultimate death of Jesus Lopez were caused solely by the negligent, careless, reckless, wanton and/or wrongful intentional acts of Defendants.

64.    The sole distributee of the Estate of Jesus Lopez is his father, Nicolas Lopez Espinoza, who as a result of the death of Jesus Lopez has suffered loss of financial support, services, society, affection and companionship.

65.    As a result of Defendants' acts, Plaintiff and his distributee suffered, and are entitled to, damages in excess of Twenty Million Dollars ($20,000,000.00), as well as punitive charges, costs and attorneys' fees.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Negligent Hiring and Retention)
### (Defendants NYC and NYPD)

66.    Paragraphs "1" through "65" are incorporated herein by reference.

67.    Defendant NYC, through the NYPD, owed a duty of care to Jesus Lopez to prevent the loss of life and liberty and the physical and mental abuse he sustained.

68.    Defendant NYC, through the NYPD, owed a duty of care to Jesus Lopez because under the same or similar circumstances, a reasonable, prudent and careful person would have anticipated an injury to him or those in a position similar to him as a result of the Defendant Officers' past conduct and training.

69.    The Defendant Officers were incompetent and unfit for their positions.

70.    Defendants NYC and NYPD knew or should have known through exercise of reasonable diligence that the Defendant Officers were potentially dangerous and had previously engaged in similar conduct.

71.    Defendants NYC and NYPD's negligence in hiring and retaining the Defendant Officers proximately caused Plaintiff's injuries.

72.    Because of the Defendant County's negligent hiring and retention of Defendant officers, Plaintiff suffered, and is entitled to, damages in excess of Twenty Million Dollars ($20,000,000.00), as well as punitive charges, costs and attorneys' fees.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally for the following relief:

A.    <u>On the First Cause of Action</u>: in excess of $20,000,000.00 in compensatory damages, punitive damages, cost and attorney's fees or such greater or lesser sum to be proven at trial in this matter;

B.    <u>On the Second Cause of Action</u>: in excess of $20,000,000.00 in compensatory damages, punitive damages, cost and attorney's fees or such greater or lesser sum to be proven at trial in this matter;

C.    <u>On the Third Cause of Action</u>: in excess of $20,000,000.00 in compensatory damages, punitive damages, cost and attorney's fees or such greater or lesser sum to be proven at trial in this matter;

D.    Attorney's fees and costs pursuant to 42 USC § 1988;

E.    Granting such other and further relief as this Court deems just and proper.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury.

11

Dated: Patchogue, New York
       March 3, 2026

**EGAN & GOLDEN, LLP**
*Attorneys for Plaintiff*

By:         _____

Christopher Bianco, Esq.
Brian T. Egan, Esq.
96 South Ocean Avenue
Patchogue, New York 11772
631.447.8100


**MICHAEL J. BROWN, P.C.**
*Attorneys for Plaintiff*

By:         _____

Michael J. Brown, Esq.
Courthouse Corporate Center
320 Carleton Avenue, Suite #2000
Central Islip, New York 11722
631.232.9700